IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NORTHWEST ENVIRONMENTAL                    No. 3:21-cv-01136-HZ
ADVOCATES, a nonprofit
organization,                              OPINION & ORDER

                Plaintiff,

      v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, MICHAEL
REGAN, in his official capacity as
Administrator of the Environmental
Protection Agency, and MICHELLE
PIRZADEH, in her official capacity as Acting
Regional Administrator Environmental
Protection Agency Region 10,

                Defendants.

James Neville Saul
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219

      Attorney for Plaintiff

1 – OPINION & ORDER

Gus Maxwell
Brian S. Uholik
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Northwest Environmental Advocates ("NWEA"), a nonprofit environmental

organization, brings four claims challenging Defendants United States Environmental Protection

Agency ("EPA"), EPA Administrator Michael Regan, and Acting EPA Regional Administrator

Michelle Pirzadeh's oversight of Oregon's implementation of Section 303(d) of the Clean Water

Act (CWA). In simple terms, Section 303(d) concerns the clean up of polluted surface waters.

Defendants move to dismiss Plaintiff's Claims Two, Three, and Four for failure to state a claim.

For the reasons that follow, the Court denies Defendants' Motion to Dismiss.

## BACKGROUND

### I.    The Clean Water Act Statutory Framework

      In *Columbia Riverkeeper v. Wheeler*, the Ninth Circuit summarized the statutory

background relevant to this case. 944 F.3d 1204, 1205 (9th Cir. 2019). The Court repeats it here.

> Congress enacted the CWA in 1972 to "restore and maintain the chemical,
> physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To
> reduce the discharge of pollutants into navigable waters, the CWA first regulates
> point-source pollution directly with technology-based permitting requirements. *Id.*
> §§ 1311(a), 1362(12). When these controls fail to adequately improve polluted
> waters, the CWA uses a holistic, water-quality based approach. *See id.* § 1313.
> Under § 1313, states must identify qualifying "water quality limited segments"
> ("impaired waters") within their borders and rank them in order of priority. A
> water may be impaired because of a high level of a specific pollutant such as
> nitrogen, or a condition such as temperature or turbidity. These rankings are
> referred to as "§ 303(d) lists." Once a state has submitted a § 303(d) list, it must

then submit a [total daily maximum load] TMDL to the EPA for approval for each pollutant in each impaired water segment. This TMDL sets the maximum amount of a pollutant that each segment can receive without exceeding the applicable water quality standard. *Id.* §§ 1313(d)(1)(A), (C).

States are required to send the EPA their initial priority ranking of impaired waters and completed TMDLs within 180 days of the agency's identification of covered pollutants. *Id.* § 1313(d)(2). The EPA published its list of covered pollutants in December of 1978, so the original priority rankings and TMDLs were due in June of 1979. The CWA requires states to update their priority rankings and submit remaining TMDLs "from time to time." *Id.* The EPA "shall either approve or disapprove" a TMDL within thirty days of its submission. *Id.* If approved, the TMDL goes into effect. *Id.* If the EPA disapproves, the agency "shall" produce and issue its own TMDL within thirty days. *Id.* These duties under the CWA are not discretionary. To this end, the CWA authorizes citizen suits in federal court against the EPA if it fails to perform any nondiscretionary duty imposed under the statute. *Id.* § 1365(a).

*Id.* at 1205–06.

## II.    Oregon's TMDL Schedule

On April 21, 2020, Oregon submitted its 303(d) list to EPA for approval. Defs.' Mot. to Dismiss Ex. 1 ("List Decision") at 1, ECF 7-1.[1] At two points during 2020, Defendants requested additional information, which Oregon provided. *Id.* On November 20, 2020, EPA approved Oregon's 303(d) list, calling it the "2014-2020" list, though Plaintiff alleges Oregon did not submit data for 2014 and 2016. *Id.*; Compl. ¶ 5.

The "2014-2020" list "includes approximately 3,741 [water quality limited segments] WQLS in need of TMDLs." Compl. ¶ 66. Oregon's "TMDL Priorities and Schedule" document separated its impaired waters into three categories: high priority, medium priority, and low

---

[1] The Court considers this document and Defendants' exhibits two and three at the motion to dismiss stage because they form the basis of Plaintiff's claims and are referred to extensively in the Complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); Compl. ¶¶ 63–67.

priority. Mot. to Dismiss Ex. 2 at 1, ECF 7-2. According to the document, for high priority

listings, Oregon is "currently working on a TMDL" or "anticipates the TMDL to be worked on

sometime before the end of 2022." *Id.* For medium priority listings Oregon expects to address

them with "TMDLs within the next eight years." *Id.* It stated further that Oregon will schedule

TMDL development for low priority listings at a future date. *Id.*

Plaintiff alleges Defendants and Oregon have failed to develop TMDLs on a reasonable

schedule. Compl. ¶ 6. It alleges that Oregon has "effectively abandoned its TMDL program" and

thus constructively submitted to EPA "a host of TMDLs for waters that have been impaired for

many years or even decades." Compl. ¶ 9. Plaintiff filed this action on August 3, 2021. Compl.

Defendants then filed this motion to dismiss.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of the claims. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the

sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## DISCUSSION

Plaintiff brings four claims for relief against Defendants. Claim One alleges Defendants violated the CWA by failing to review and approve Oregon's constructively submitted TMDLS for most WQLS in Oregon. Claim Two, brought under the Administrative Procedures Act ("APA"), alleges Oregon's TMDL Priority Ranking and Schedule was arbitrary, capricious, and contrary to law because it: (1) failed "to account for 'the severity of the pollution and the uses to be made of such waters' as required by 40 C.F.R. § 130.7(b)(4)"; (2) failed "to include any waters targeted for TMDL development in the two years following submittal"; and (3) provided "no schedule that indicates how long it will take to complete TMDLs." Compl. ¶ 83. Claim Three alleges Defendants violated the CWA by failing to determine Oregon's schedule for the submission of TMDLs as required by Section 303(d) and 40 C.F.R. § 130.7(d)(1). Claim Four is brought under the APA and alleges in the alternative that Defendants' failure to determine Oregon's schedule for the submission of TMDLs was arbitrary, capricious, and an abuse of discretion. Defendants move to dismiss Plaintiff's Claims Two, Three, and Four.

The Court finds Claim Two is justiciable under the APA because EPA's review of Oregon's TMDL priority ranking and schedule is a final agency action. On Claim Three, the Court finds Plaintiff provided adequate notice and alleged that Defendants failed to perform a

nondiscretionary duty under the CWA. Because Claim Four is pled in the alternative to Claim Three, the Court declines to address the merits of the parties' arguments at the motion to dismiss stage. Accordingly, the Court denies Defendants' motion to dismiss Claims Two, Three and Four.

## I.      Claim Two

Plaintiff's Claim Two challenges EPA's review of Oregon's priority ranking and schedule of its 303(d) impaired waters list. Defendants argue this claim should be dismissed because it does not challenge a final agency action justiciable under the Administrative Procedures Act, and that even if it does, it should be dismissed on the merits because EPA's actions were reasonable.

### A.      Final Agency Action

For an action to be final it must: (1) "mark the consummation of the agency's decisionmaking process [and] must not be of a merely tentative or interlocutory nature"; and (2) "be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

Defendants argue that the action challenged by Plaintiff in Claim Two meets neither condition of the *Bennett* test because the relevant final action in this conext is whether the EPA approves or disapproves the 303(d) list, not EPA's review of Oregon's priority ranking and schedule. It contends that EPA's review of Oregon's priority rankings is an interim step, not a final action.

There are no cases that directly address this question. There are, however, cases that consider priority ranking in the context of EPA's 303(d) list approval. Taken together, these cases support that the *Bennett* test is met.

In *Friends of Wild Swan v. U.S. Env't Prot. Agency*, the Ninth Circuit reviewed a district court decision finding that EPA violated the APA and the CWA "by arbitrarily and capriciously approving Montana's 1998 list of water quality limited segments ("WQLSs") and corresponding total maximum daily loads ("TMDLs") submitted to EPA pursuant CWA § 303(d)." 74 F. App'x 718, 720 (9th Cir. 2003). EPA argued the court could not review the plaintiffs' APA claim because they failed to challenge a final agency action. *Id.* The Ninth Circuit found that the action was final, writing the following:

> This requirement is easily met in this case. The EPA's June 23, 1998, order was accompanied by a statement of reasons explaining the EPA's analysis and the basis for approval. The order was not tentative or interlocutory. *See id*. Legal consequences flowed from the EPA's decision to approve the list.  For example, disapproval would require the EPA to identify the WQLSs and the TMDLs. The list and TMDLs must be incorporated into the State's continuing planning process under 33 U.S.C. § 1313(e), which must also be approved by the EPA. If the EPA does not approve the list and continuing planning process, permits will not issue. See 33 U.S.C. § 1313(e)(2) ("[The] Administrator shall not approve any State permit program [NPDES/MPDES] ... for any State which does not have an approved continuing planning process."). The approval of the list also sets parameters for future licenses, which must comply with TMDLs.

*Id.* at 720–21.

Defendants argue this case does not answer the question here because *Friends of the Wild Swan* addressed finality as it related to the approval of the 303(d) list only. While this may be true, the Ninth Circuit's discussion of the planning process suggests approval of the priority ranking and schedule meets the *Bennett* test. It states both that the planning process must be approved by the EPA, and that legal consequences flow if the planning process is not approved. Thus, *Friends of the Wild Swan* suggests that Plaintiff's claims are justiciable under the APA.

*Sierra Club, Inc. v. Leavitt* gets closer to addressing the finality question relevant here. 488 F.3d 904, 917 (11th Cir. 2007). In *Leavitt*, the plaintiff argued EPA should not have approved Florida's priority ranking for two reasons: (1) because its designation of certain waters

as "low" priority violated the CWA's requirement that state's account for the severity of pollution; and (2) its determination was based on an alleged misunderstanding of the relevant science. *Id.* The district court granted EPA summary judgment on this argument and found that "there is no requirement that EPA actually approve or disapprove of a state's priority rankings." *Id.* The Eleventh Circuit reversed. It found that the district court had misconstrued the plaintiff's argument by focusing on whether "EPA had a duty to approve the specific level of ranking assigned by Florida to each WQLS." *Id.* Instead, the Eleventh Circuit characterized Plaintiff's argument as a challenge to EPA's conclusion that Florida had adequately considered the "the severity of the pollution" and the "uses to be made" of the WQLSs as required by 33 U.S.C. § 1313(d)(1)(A) in approving Florida's priority ranking. *Id.* at 918. Accordingly, it allowed the claim to proceed and remanded, noting that resolution of the issue required an examination of the administrative record. *Id.*

Similarly, in *Env't L. & Pol'y Ctr. v. United States Env't Prot. Agency*, a district court allowed a claim brought under the APA to proceed that challenged EPA's approval of Ohio's EPA priority ranking. 415 F. Supp. 3d 775, 778 (N.D. Ohio 2019). As in this case, the EPA argued it had "no power or authority to approve the merits of a state's priority ranking." *Id.* at 785. Following *Leavitt*, the court focused on the plaintiff's challenge to Ohio EPA's consideration of "the severity of pollution" in setting the statutorily required priority ranking and rejected that argument. *Id.* at 785–786. It found that EPA's approval letter represented a final action "approving Ohio's impaired waters list and finding that Ohio EPA submitted a priority ranking in accordance with § 1313(d)(1)(A)." *Id.* at 786 (citation omitted).

Plaintiff's Claim Two challenges a final agency action. Defendants' determination that Oregon submitted a priority ranking and schedule that adequately accounted for "the severity of

the pollution and the uses to be made of such waters" as required by 40 C.F.R. § 130.7(b)(4) "marked the consummation of the agency's decision making process" related to the priority ranking and schedule for Oregon's "2014-2020" list. *Bennett*, 520 U.S. at 178. This decision had the legal consequence of allowing Oregon's TMDL planning process to move forward. *See Friends of Wild* Swan, 74 *F. App'x* at 720 ("If the EPA does not approve the list and *continuing planning process*, permits will not issue . . . The approval of the list also sets parameters for future licenses, which must comply with TMDLs.") (emphasis added); *see also* Congressional Research Service, *Clean Water Act and Pollutant Total Maximum Daily Loads (TMDLs)*, (updated January 17, 2014) ("For waters impaired by point source discharges, TMDLs are enforced through revisions to existing CWA permits, which include the pollutant limits and a schedule for compliance."). The Court finds that EPA's approval letter represents a final action, and that Plaintiff may challenge EPA's finding that Oregon submitted a priority ranking and schedule in accordance with § 1313(d)(1)(A).

## B.    Merits

Next, Defendants argue that Plaintiff's Claim Two should be dismissed because EPA's approval was reasonable. Plaintiff does not respond to the substance of Defendants' arguments. Instead, it argues that it is premature to consider the reasonableness of EPA's actions because the administrative record has not been filed.

The APA requires the court to review an agency action based on "the whole record." 5 U.S.C. § 706. "'The whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993). Defendants urge the Court to make this determination based on the 2020 Approval Letter and a document it attached to its motion titled, "State of Oregon

Department of Environmental Quality TMDL Priorities and Schedule." On this limited record, the Court will not determine whether EPA's actions were reasonable and declines to convert the motion to dismiss into a motion for summary judgment. The Court will resolve these merits questions at summary judgment with the benefit of the complete administrative record. The Court denies Defendant's motion to dismiss Claim Two.

## II.    Claim Three

On Claim Three Plaintiff alleges Defendants violated the CWA by failing to determine Oregon's schedule for the submission of TMDLs "as required by Section 303(d) and 40 C.F.R. § 130.7(d)(1)." Compl. ¶ 85–90. Plaintiff's Claim Three is based on 40 C.F.R. § 130.7(d)(1), which derives from the portion of the CWA that requires states to submit TMDLs "from time to time." *See* 33 U.S.C. § 1313(d). Plaintiff refers to both requirements in its notice.

Defendants make two jurisdictional challenges to Claim Three. First, Defendants argue that Plaintiff's pre-suit notice letter failed to include sufficient information to confer jurisdiction over Claim Three. Next, Defendants contend that EPA did not have a nondiscretionary duty to ensure a reasonable schedule was established for the development of TMDLS for WQLS in Oregon. Finally, they argue that even if the Court has jurisdiction, it should dismiss Claim Three on the merits.

### A.    Notice

Defendants argue Plaintiff's Claim Three should be dismissed because it failed to give notice of its intent to sue. Plaintiff responds that its notice was sufficient because (1) it referenced the provision of the CWA that creates the EPA's mandatory duty; and (2) although the notice letter focused on Claim One, Claim One and Claim Three share the same factual predicate—"the lack of a comprehensive TMDL schedule." Pl. Resp. at 17.

Under the CWA, "any citizen may commence a civil action . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. 1365(a)(2). Prior to filing suit, a citizen plaintiff must give the alleged violator at least sixty days notice. *Id.* (b)(2). The 60-day notice requirement "allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits" and "gives the alleged violator 'an opportunity to bring itself into complete compliance with the Act'" *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987)).

To give adequate notice of an alleged violation, a party must "[a]t a minimum . . . provide sufficient information . . . so that the [notified parties] could identify and attempt to abate the violation." *Southwest Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 522 (9th Cir. 1998) (citation omitted). "A citizen 'is not required to list every specific aspect or detail of every alleged violation. Nor is the citizen required to describe every ramification of a violation.'" *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (quoting *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy* (*Bosma Dairy*), 305 F.3d 943, 951 (9th Cir. 2002)). Instead, courts look to the "overall sufficiency" of the notice. *Id.* (citations omitted). When a plaintiff does not fulfill the notice requirement, "the district court must dismiss the action as barred by the terms of the statute." *Ctr. For Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 800 (9th Cir. 2009).

The EPA promulgated the following regulation that describes what constitutes adequate notice under the CWA.

Notice regarding an alleged failure of the Administrator to perform any act or duty under the Act which is not discretionary with the Administrator shall identify the

provision of the Act which requires such act or creates such duty, shall describe with reasonable specificity the action taken or not taken by the Administrator which is alleged to constitute a failure to perform such act or duty, and shall state the full name, address and telephone number of the person giving the notice.

40 C.F.R. § 135.3.

Plaintiff submitted its "Notice of Intent to Sue for Failure to Perform Mandatory Duties Under Section 303(d) of the Clean Water Act" on April 13, 2021. Def. Ex. 3 at 1. The relevant sections of the notice read as follows:

> This letter provides notice that Northwest Environmental Advocates ("NWEA") intends to file suit pursuant to section 505(a)(2) of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(2), against the U.S. Environmental Protection Agency ("EPA"), the EPA Administrator, and the EPA Regional Administrator for Region 10 for violating their mandatory duties under CWA section 303(d), 33 U.S.C. § 1313(d), relating to the development and implementation of total maximin daily loads ("TMDLs") in the State of Oregon.
>
> Section 303(d)(2) of the CWA requires each state to prepare and "submit to the Administrator from time to time" a list of "waters identified and loads established under" subsections 303(d)(l)(A)-(D), including (among other components) a list of waters for which technology-based effluent limitations "are not stringent enough to implement any water quality standard applicable to such waters." 33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. §§ 130.7(b);130.lO(b), (d). This list of waters is commonly known as a "303(d) list" or "impaired waters list"
> and the waters are known as "water quality limited segments" or "WQLS."
> Along with its 303(d) list, states must prepare and submit to the Administrator, in accordance with the state's priority ranking, "the total maximum daily load" (TMDL) of pollutants contributing to the impairments of such waters, "established at a level necessary to implement the applicable water quality standard with seasonal variations and a margin of safety which takes into account any lack of knowledge concerning the relationship between effluent
> limitations and water quality." 33 U.S.C. § 1313(d)(l)(C), *see also* 40 C.F.R. § 1365(a)(2). EPA's regulations require that each state submit its "list of waters, pollutants causing impairment, and the priority ranking including waters targeted for TMDL development within the next two years" to EPA every two years. 40 C.F.R. § 130.7(d)(l). These submissions are due "on April 1 of every even-numbered year." *Id.* States must prepare TMDLs "in accordance with
> the priority ranking." 40 C.F.R. § 130.7(c)(l). Federal regulations provide that "schedules for submissions of TMDLs shall be determined by the [EPA] Regional Administrator and the State." 40 C.F.R. § 130.7(d)(l).
>
> * * *

> For each WQLS identified above, a constructive submission has occurred because Oregon has failed to "develop and issue" the required TMDL "for a prolonged period of time and has failed to develop a schedule or credible plan for producing that TMDL." *Columbia Riverkeeper,* 944 F.3d at 1211. With respect to each of those constructively submitted TMDLs, EPA has failed to complete its mandatory duty under section 303(d)(2) to "either approve or disapprove" the TMDL, 33 U.S.C. § 1313(d)(2), and NWEA intends to file suit to obtain a court order requiring EPA, its Administrator, and Regional Administrator for Region 10 to complete such mandatory duty for each such TMDL. *Id.* § 1365(a)(2).

*Id.* at 1–2, 4.

The Court first notes that the notice letter does identify the provision of the CWA that "requires the act or creates the duty" alleged in Claim Three. 40 C.F.R. § 135.3. Plaintiff's Claim Three is based on 40 C.F.R. § 130.7(d)(1), which derives from the portion of the CWA that requires states to submit TMDLs "from time to time." *See* 33 U.S.C. § 1313(d). Plaintiff refers to both requirements in its notice.

Defendants argue Plaintiff failed to give adequate notice for Claim Three because although if referred to these provisions, the notice letter focused on Claim One—the constructive submission theory. Plaintiff responds that the factual predicate for Claim One and Claim Three are the same, so the notice should have alerted EPA to its Claim Three as well. The Court agrees with Plaintiff.

The close factual relationship between the claims supports finding that the notice was sufficient. The purpose of the notice requirement is to allow EPA to "take responsibility for enforcing environmental regulations" and to give it "an opportunity to bring itself into complete compliance." *Hallstrom*, 493 U.S. at 29. As Plaintiff points out, the alleged lack of a comprehensive TMDL schedule drives both claims. As a result, the notice letter gave Defendants adequate opportunity to bring themselves into compliance. Defendants' focus on the specific framing of Claim Three ignores the Ninth Circuit's direction to consider the "overall

sufficiency" of the notice. *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651 (citing *Bosma Dairy*, 305 F.3d at 951).

Defendants contend this case is unlike, *Bosma Dairy*, where the Ninth Citcuit allowed the plaintiff to plead alleged violations that were not specifically described in the 60-day notice letter. 305 F.3d 943.

In *Bosman Dairy*, the plaintiff's notice alleged Bosman Dairy violated the CWA through twelve unlawful manure discharges from January 1992 to June 1997. *Id.* at 948–51. In its complaint, the plaintiff included an additional thirty-two discharges from April 1992- September 1997 that were not in the original notice letter. *Id.* The Ninth Circuit found that the notice was sufficient for all the alleged discharges. The Court noted that "[t]he purpose of the 60 day notice is to provide the agencies and the defendant with information on the cause and type of environmental laws or orders the defendant is allegedly violating so that the agencies can step in, investigate, and bring the defendant into compliance." *Id.* at 953.

While not factually similar to this case, *Bosman Dairy's* teaching helps to evaluate the notice here. It stands for the proposition that adequate notice provides sufficient information to allow "the defendant to identify and address the alleged violations, considering the defendant's superior access to information about its own activities." *Klamath-Siskiyou Wildlands Ctr.*, 797 F.3d at 651 (describing the key issue in *Bosman Dairy* and related cases). Plaintiff's notice provided Defendants with information on the alleged problem and the environmental law Defendants allegedly violated. Base on this information, Defendants had an opportunity to comply with the relevant laws. The Court finds Plaintiff's notice letter was adequate.

//

//

**B.**     **Nondiscretionary Duty**

Next, Defendants argue that the Court lacks jurisdiction over Plaintiff's Claim Three because Plaintiff has not shown that EPA failed to perform a nondiscretionary statutory duty. Plaintiff responds that EPA has a nondiscretionary duty under the CWA and implementing regulation 40 C.F.R. § 130.7(d)(1) to determine a schedule for the submission of TMDLs for all waters on the 303(d) list.

The relevant citizen suit provision reads as follows: "any citizen may commence a civil action . . . against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. 1365(a)(2). Thus, jurisdiction exists only if Defendants failed to perform a nondiscretionary duty. The parties disagree as to whether 40 C.F.R. § 130.7(d)(1) establishes a nondiscretionary duty on the part of the EPA.

40 C.F.R. § 130.7(d)(1) falls under part 130 of the Water Programs subchapter of the EPA's administrative regulations. Part 130 "establishes policies and program requirements for water quality planning, management and implementation under sections 106, 205(j), non-construction management 205(g), 208, 303 and 305 of the Clean Water Act." 40 C.F.R. § 130.0. The parties agree that 40 C.F.R. § 130.7(d)(1) derives from 33 U.S.C. § 303(d) that requires states to submit TMDLs "from time to time."

First, Defendants argue that an EPA created regulation cannot give rise to a citizen suit under the CWA. The Ninth Circuit has allowed a citizen suit based on mandatory regulations in a similar context. In *Nat. Res. Def. Council, Inc. v. James R. Perry*, the Ninth Circuit found the Energy Policy and Conservation Act's (EPCA) citizen suit provision applied to "citizen suits predicated on a non-discretionary duty imposed either by statute or regulation." 940 F.3d 1072,

1081 (9th Cir. 2019). The court looked to the term "under this part" in the citizen suit provision and found that "Congress consistently used the phrase 'under this part' or 'under this section' when referring to requirements established by regulation." *Id.* at 1080; *see also Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 556 (D.D.C. 2005) (finding that under the "Clean Air Act, it is clear that the phrase 'under this chapter' encompasses both the statutory obligations imposed in the Act itself, and the regulatory obligations promulgated under the auspices of the Act.").

The CWA's citizen suit provision uses the term "under this chapter" to describe the nondiscretionary duties within its ambit. Similar to the EPCA, Plaintiff points out that when "under this chapter" is used elsewhere in the same provision, it refers to the CWA and the regulations that implement the Act. *See, e.g.,* 33 U.S.C. § 1365(f) (defining the phrase "effluent standard or limitation under this chapter" to include several regulatory limitations or restrictions promulgated by EPA under various provisions of the CWA). Defendants do not object to this reading of the statute or offer examples where "under this chapter" refers only to the CWA. Accordingly, the Court finds Plaintiff's argument persuasive that "under this chapter" in the CWA's citizen suit provision applies to nondiscretionary duties imposed either by statute or regulation.

Next, Defendants argue that 40 C.F.R. § 130.7(d)(1) does not create a mandatory duty because the relevant text is not clear cut. 40 C.F.R. § 130.7(d)(1) provides that "[s]chedules for submission of TMDLs shall be determined by the Regional Administrator and the State." "In other contexts, the Supreme Court has noted that use of the term 'shall' is indicative of 'mandatory language.'" *See Nw. Env't Advocs. v. U.S. E.P.A.*, 268 F. Supp. 2d 1255, 1260 (D. Or. 2003) (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34–35(1998); *Pierce v. Underwood*, 487 U.S. 552, 569–70 (1988)). The Ninth Circuit has also

described "shall" as "mandatory language" in the context of the CWA. *See Idaho Conservation League, Inc., v. Russell*, 946 F.2d 717, 720 (9th Cir. 1991) ("Section 303(c)(3) uses mandatory language, stating 'the Administrator *shall* promulgate such standard pursuant to [Section 303(c)(4) ].'" (citation omitted)). Similarly, here, "shall" indicates that Defendants are mandated to act. Accordingly, the text of the regulation is not ambiguous on its face.[2]

Defendants' strongest argument is that the regulation is not clear cut because it blends the roles of EPA and the state. But the fact that 40 C.F.R. § 130.7(d)(1) contemplates a role for the state and EPA, does not mean Defendants do not have a duty to act. The Ninth Circuit has found a nondiscretionary duty under a related section of the CWA where states and the EPA have similarly overlapping roles. In *Columbia Riverkeeper v. Wheeler*, the Ninth Circuit examined whether EPA had a nondiscretionary duty to act even though the relevant section of the CWA "is silent as to what duties the EPA has when a state simply fails to submit a TMDL altogether." 944 F.3d 1204, 1208 (9th Cir. 2019). The Court found that a state's failure to submit a TMDL can "trigger the EPA's nondiscretionary duty to develop and issue its own TMDL." *Id.* at 1209. This is the "constructive submission" theory and the basis for Plaintiff's Claim One.

Finally, Defendants argue their interpretation of 40 C.F.R. § 130.7(d)(1) controls the outcome of this question. However, an agency's interpretation of an administrative regulation is only entitled to deference when the regulation is "genuinely ambiguous." *Goffney v. Becerra*, 995 F.3d 737, 742-44 (9th Cir.), *cert. denied*, 142 S. Ct. 589 (2021) (explaining how courts interpret administrative regulations) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019)). As

---

[2] That 40 C.F.R. § 130.7(d)(1) does not identify a specific deadline does not change the Court's analysis. *See Nw. Env't Advocs. v. United States Env't Prot. Agency*, No. 1:13-CV-00263-DCN, 2021 WL 3037409, at *13–14 (D. Idaho July 19, 2021) July 19, 2021 (exploring the date-certain rule at length and finding that it does not apply in the context of the CWA).

17 – OPINION & ORDER

discussed above, the text of 40 C.F.R. § 130.7(d)(1), and the use of the word "shall," is not "genuinely ambiguous." Defendants' interpretation does not merit deference.

The Court finds EPA has a nondiscretionary duty to determine "[s]chedules for submission of TMDLs." 40 C.F.R. § 130.7. Accordingly, the Court has jurisdiction to consider Plaintiff's Claim Three. As with Claim Two, the Court declines to address Defendants' merits arguments without the benefit of the administrative record and without further argument from the parties. Thus, the Court denies Defendants' motion to dismiss Claim Three.

**III.    Claim Four**

Plaintiff's Claim Four, pled in the alternative to Claim Three, alleges Defendants' failure to adopt a TMDL schedule for Oregon was arbitrary, capricious, or an abuse of discretion under Section 706(2)(A) of the APA, or was an unreasonably delayed action under APA Section 706(1). Defendants move to dismiss this claim arguing Plaintiff's Claim Four fails under either provision of the APA.

The APA provides a right to judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704; *see W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011) ("the APA applies only where there is 'no other adequate remedy in a court,' 5 U.S.C. § 704, and—because the ESA provides a citizen suit remedy—the APA does not apply in such actions." (citation omitted)); *see also Washington Toxics Coal. v. Env't Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005) ("Because this substantive statute [the ESA] independently authorizes a private right of action, the APA does not govern the plaintiffs' claims."); *Or. Nat. Res. Council v. U.S. Forest Serv.*, 834 F.2d 842, 851 (9th Cir. 1987) (noting in dicta that APA review does not apply when "plaintiffs may otherwise proceed under the citizen suit provision" of the CWA).

In its response to the Court's request for supplemental briefing, Plaintiff acknowledges that its Claims Three and Four are mutually exclusive. Pl. Supp. Brief at 3, ECF 13. Still, it asks the Court to defer dismissing its APA claim until the summary judgment stage of litigation. The Court grants Plaintiff's request and denies Defendant's motion to dismiss Claim Four. Although Claim Four is unlikely to survive past summary judgment, the Court agrees that the record related to Claim Three and Claim Four is underdeveloped. Before dismissing Claim Four, the Court would benefit from thorough briefing and a more developed factual record. The Court will address the parties' argument regarding Claim Four, if necessary, at summary judgment with the benefit of administrative record and any other admissible evidence.

### CONCLUSION

Defendants' Motion to Dismiss [7] is DENIED.

IT IS SO ORDERED.

DATED:   April 4, 2022          .

_Marco Hernandez_

MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER