JAMES N. SAUL
Earthrise Law Center
at Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799
Tel: (503) 768-6929
Fax: (503) 768-6642
E-mail: jsaul@lclark.edu

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **NORTHWEST ENVIRONMENTAL ADVOCATES**, a non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL REGAN**, in his official capacity as Administrator of the Environmental Protection Agency; and **MICHELLE PIRZADEH**, in her official capacity as Acting Regional Administrator Environmental Protection Agency Region 10,<br><br>Defendants. | Case No: 3:21-cv-01136-HZ<br><br><br>**PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REVIEW AND FOR LEAVE TO TAKE DISCOVERY ON ITS CLEAN WATER ACT CONSTRUCTIVE SUBMISSION CLAIM (CLAIM ONE)**<br><br><br>**ORAL ARGUMENT REQUESTED** |

## MOTION

Plaintiff Northwest Environmental Advocates ("NWEA") hereby moves the Court for an order (1) holding that the Court's review of Claims One, Three, and Four is not confined to the administrative record(s) previously filed by defendant U.S. Environmental Protection Agency ("EPA") in this case; and (2) permitting NWEA to take limited discovery of EPA and intervenor-defendant State of Oregon (acting by and through the Oregon Department of Environmental Quality ("DEQ")) in order to build the evidentiary record for NWEA's constructive submission claim (Claim One), which arises not under the Administrative Procedure Act but under Clean Water Act's citizen suit provision.

In compliance with Local Rule 7-1, the parties made a good faith effort via telephone conference on July 14, 2022 to resolve this dispute, but were unable to do so.

## MEMORANDUM IN SUPPORT OF MOTION

### INTRODUCTION

In this suit, NWEA alleges four claims against EPA, each related to that agency's implementation and oversight (or lack thereof) of Oregon's total maximum daily load ("TMDL") program under section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d). Only NWEA's Claim Two arises solely under section 706(2)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A); that claim seeks review of EPA's November 12, 2020 approval of Oregon's 2020 TMDL Priority Ranking and Schedule, which the Court determined was a "final agency action" properly subject to review under the APA and will be resolved "at summary judgment with the benefit of the complete administrative record." Opinion and Order, Dkt. #15, at 6–10. NWEA recognizes that review of Claim Two is properly limited to the administrative record, and does not seek leave to take discovery on that claim.

The other three claims, however, are not confined to any administrative record, and indeed there is no such thing as an "administrative record" for those remaining claims because each one challenges an EPA *inaction* or failure to act. Claims One and Three arise under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(2), which authorizes suit to compel EPA to perform its non-discretionary duties under the Act. As discussed in greater detail below, the APA does not provide either the jurisdictional basis or the scope of review for those claims, and thus NWEA should be permitted to use other non-record evidence in support of those claims. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011).

Claim Four is pled under both APA section 706(2)(A) (establishing the "arbitrary and capricious" standard of review) and under 706(1), the source of the so-called "unreasonable delay" standard of review. In making its "unreasonable delay" arguments, NWEA should be permitted to use evidence beyond EPA's proffered "record" because, as the Ninth Circuit has explained, review of such claims "is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000).

But simply permitting NWEA to offer extra-record evidence in support of its arguments for Claims One, Three, and Four is not enough to allow for effective judicial review, because the agency defendants (EPA and DEQ) uniquely possess and control access to almost all of the relevant evidence necessary to adjudicate those claims, and thus discovery of the agency defendants is necessary here. This is especially true for NWEA's Claim One, which alleges that EPA has failed to review and disapprove Oregon's "constructively submitted" TMDLs, as required by section 303(d)(2) of the Clean Water Act, 33 U.S.C. § 1313(d)(2). As the Ninth Circuit has recently explained,

> Where a state has failed to develop and issue a particular TMDL for a prolonged period of time, and has failed to develop a schedule and credible plan for producing that TMDL, it has no longer simply failed to prioritize this obligation. Instead, there has been a constructive submission of no TMDL, which triggers the EPA's mandatory duty to act.

*Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1211 (9th Cir. 2019).[1] As this language suggests, whether EPA's mandatory duty under section 303(d)(2) has been triggered depends in large part upon various actions or inactions of the *state*—in this case, DEQ—with respect to the TMDLs needed for its waters.

NWEA pled its Claim One to be consistent with the constructive submission doctrine as delineated by the *Columbia Riverkeeper* court. NWEA alleges that DEQ has constructively submitted to EPA "a total of approximately 2,467 TMDLs" because (1) those TMDLs are for waters have been on the State's list of impaired waters for at least ten years—since 2012 or earlier—and (2) DEQ "currently has no plan or schedule in place for the completion of those needed TMDLs . . . and lacks the funding and staffing resources needed to complete them in a timely manner, as the Clean Water Act requires." Dkt. #1 at ¶¶ 73–79. The *Columbia Riverkeeper* framework provides sufficient contours for the type of evidence needed to adjudicate Claim One, as well as the scope of discovery needed to obtain that evidence.

## EPA'S DOCUMENT PRODUCTION TO DATE

Although EPA has produced what it calls "administrative records" in this case, that document production is one-sided and necessarily paints an incomplete picture of Oregon's TMDL program. Since the outset of this litigation, the parties have disagreed over the scope of review, in particular for Claim One, and have held several discussions over how EPA might even

---

[1] The mandatory duty to which the court referred is EPA's duty to "approve or disapprove [a TMDL] not later than thirty days after the date of submission" by a state. 944 F.3d at 1209–10 (quoting 33 U.S.C. § 1313(d)(2)).

go about assembling a "record" for a suite of federal agency actions that NWEA alleges have not occurred, and for which much of the evidence is likely to come not from EPA itself, but from DEQ.

EPA requested input from the parties concerning specific documents to include in the so-called record, and on May 4, 2022 DEQ provided the parties with a list of 165 documents "that DEQ requests that EPA include in the administrative record for Claim 1[.]" Saul Decl. Ex. 1 (5/4/22 Englander Email). All of those DEQ-supplied documents are found on EPA's certified index of record for Claim One. Dkt. #23–2.[2] Also on May 4, NWEA supplied EPA and DEQ with its list of eleven categories of documents that NWEA contends are relevant for determining whether a constructive submission of one or more TMDLs by DEQ to EPA has occurred. Saul Decl. Ex. 2 (5/4/22 Saul Email). Unlike EPA and DEQ, NWEA does not implement or supervise Oregon's TMDL program and accordingly is not in possession of those relevant documents. Nor is NWEA intimately familiar with how DEQ creates, organizes, and maintains the records of its TMDL program, and so NWEA is only able to generally describe the nature of the relevant documents—much like a party might do in drafting requests for production of documents under Federal Rule of Civil Procedure 34.[3] EPA did not substantively respond to NWEA's proffered

---

[2] Although described by EPA as "administrative records," for the reasons explained in the Memorandum any "record" produced to date for Claims One, Three, and Four must be viewed as a fiction, because there is no agency decision to demarcate the record. NWEA therefore construes the documents produced voluntarily by EPA as the agency's initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii).

[3] *See* Fed. R. Civ. P. 34(b) (requiring a party to describe the documents it seeks with "reasonable particularity"); *Richmond v. Mission Bank*, 2015 WL 1637835, at *2 (E.D. Cal. Apr. 13, 2015) (a Rule 34 document request is sufficiently clear if it "places the party upon reasonable notice of what is called for and what is not") (internal quotations omitted).

list of document categories, and the agency did not commit to perform a search for those

documents or to voluntarily produce any particular documents covered by NWEA's requests.

On May 27, 2022, EPA lodged with the Court and produced to the parties what it

described as "the administrative records for judicial review in this case." Dkt. #23 at 1. On its

own initiative and without any discussion or agreement between the parties, EPA chose to

prepare two separate "records": one just for Claim One, the constructive submission claim, and

the other for Claims Two, Three, and Four. *See* Dkt. ## 23-1 and 23-2. The certification that

accompanied the documents EPA gathered for Claim One does not describe how those

documents were searched for, assembled, and reviewed for potential exclusions; it vaguely states

that the enclosed documents "comprise EPA's administrative record for judicial review, as of

May 27, 2022, for the alleged agency action or inaction regarding TMDLs for claim one[.]" Dkt.

#23-1, ¶ 3.

A month later, in response to a request from NWEA's undersigned counsel for further

explanation about how EPA went about searching for the documents included in its "record" for

Claim One, counsel for EPA replied as follows:

> Because the finding of a constructive submission requires consideration of whether
> Oregon has clearly and unambiguously decided not to submit TMDLs, EPA
> reviewed the present level of performance of the Oregon TMDL program. This
> review appears in the record document entitled "Synopsis of Oregon Department
> of Environmental Quality's 303(d) Assessment & Total Maximum Daily Load
> Program." The Claim 1 AR includes the documents considered by EPA in the
> course of that review, as well as documents transmitted between the Oregon
> Department of Environmental Quality and EPA Region 10 since May 2018—the
> month when the currently effective 303(d) list was first presented to EPA in draft
> form—that were relevant to whether there is a present constructive submission of
> any TMDLs.
>
> Additionally, in our April 20 phone call, I invited NWEA and Oregon to identify
> materials that might be appropriate for inclusion in this record. Oregon responded
> on April 28, identifying over 130 specific documents—all of which were included
> in the record. NWEA responded on May 4 with a list of 11 categories of materials

(rather than specific documents). To the extent that relevant materials were transmitted between the Oregon Department of Environmental Quality and EPA Region 10 since May 2018, or otherwise considered in EPA's review of the Oregon TMDL program's present level of performance, these materials are contained in the Claim 1 AR.

Saul Decl. Ex. 3 (6/10/22 Maxwell Email).[4]

EPA's explanation is problematic, and shows that reasonably tailored discovery is necessary here to develop the factual record for the Court's review of Claim One. First, although EPA's self-serving TMDL Synopsis purports to be intended to "inform the Water Division Director and the Regional Administrator regarding Oregon's work" in developing TMDLs, *id*. at EPA_000004, EPA counsel's explanatory email makes clear that it was prompted specifically by this litigation, and written for the sole purpose of aiding in EPA's defense against NWEA's Claim One. Moreover, EPA has never explained how its programmatic review was conducted; how EPA chose specific documents to "consider" in the course of its review; or how the two authors of the TMDL Synopsis are qualified to offer what amounts to, in large part, previously undisclosed opinion testimony about the purported root causes of Oregon's delay in producing TMDLs.

Even more concerning, EPA has so far ignored NWEA's informal request to search for and produce documents relevant to whether Oregon has "constructively submitted" thousands of TMDLs under the Ninth Circuit's formulation of the constructive submission doctrine described in *Columbia Riverkeeper*, as NWEA alleges in Claim One. At the same time, EPA willingly included in the Claim One "administrative record" the several hundred documents chosen by

---

[4] As EPA's explanation states, the agency's programmatic review of the Oregon TMDL program is reflected in a document called *Synopsis of Oregon Department of Environmental Quality's 303(d) Assessment & Total Maximum Daily Load Program* (May 2022) (hereinafter, "TMDL Synopsis"), which found in the Claim One "record" at Bates No. EPA_0000001. A copy of that TMDL Synopsis document is filed herewith as Exhibit 4 to the Saul Declaration.

PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REVIEW AND FOR LEAVE TO TAKE DISCOVERY

DEQ from its own files. This one-sided approach to building the record for review will only lead to a deeply skewed view of Oregon's TMDL program, prejudicing NWEA's ability to advance Claim One and preventing the Court from rendering a fully-informed decision.

## ARGUMENT

I.    **The Court's Review of NWEA's Claims One, Three, and Four is not Limited to the Administrative Records Lodged by EPA.**

As noted above, three of NWEA's four claims in this case challenge EPA's various *failures* to act with respect to Oregon's deficient TMDL program. Two of those claims are brought pursuant to the Clean Water Act's citizen suit provision, for which the APA does not provide the scope of review. And the Fourth Claim is an APA "unreasonable delay" claim for which there is no administrative record to begin with. Under Ninth Circuit precedent, the Court's review of NWEA's Claims One, Three, and Four is not confined to the records, and the Court should clarify that NWEA may submit extra-record evidence in support of those three claims.

A.   **NWEA's Clean Water Act citizen-suit claims (Claims One and Three) are not governed by the APA's scope of review, and thus extra-record evidence is permissible.**

The APA applies only where there is no other adequate remedy in a court. 5 U.S.C. § 704. For Claims One and Three, there is an adequate remedy: the Clean Water Act's citizen suit provision. Because the APA does not govern those two claims, its provision limiting review to the "whole record" does not apply, and NWEA may submit extra-record evidence to show that EPA has failed to take nondiscretionary duties with respect to Oregon's TMDL program.

In a pair of cases the Ninth Circuit has confirmed that a court's review of claims brought against federal agencies under the Endangered Species Act's analogous citizen suit provision is not confined to an administrative record, and that extra-record evidence may be considered. In

the first case, *Washington Toxics Coalition v. U.S. Environmental Protection Agency*, the court held that where a "substantive statute independently authorizes a private right of action, the APA does not govern the plaintiffs' claims." 413 F.3d 1024, 1034 (9th Cir. 2005) (citing the APA at 5 U.S.C. § 704, which provides a cause of action only for review of a "final agency action for which there is no other adequate remedy in a court."). The Ninth Circuit extended *Washington Toxics* a few years later by explaining that because the Endangered Species Act "provides a citizen suit remedy," the APA does not apply, and thus courts may "consider evidence outside the administrative record for the limited purposes of reviewing" those citizen suit claims. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 497 (9th Cir. 2011). The Ninth Circuit in both cases recognized that while the *standard* of review of Endangered Species Act citizen-suit claims was the APA's familiar "arbitrary and capricious" standard, the *scope* of review was not derived from the APA's "whole record" rule.[5]

The majority of courts within this District to consider this issue have followed *Washington Toxics* and *Kraayenbrink* to permit the consideration of extra-record evidence in citizen suits against federal agencies, at least those arising under the Endangered Species Act. *See Jeffries*, 370 F. Supp. 3d at 1227; *Nw. Envtl. Advocates. v. U.S. Fish & Wildlife Serv.*, 2019 WL 6977406, at *14 (D. Or. Dec. 20, 2019); *Native Fish Soc'y. v. Natl. Marine Fisheries Serv.*, 992 F. Supp. 2d 1905, 1106 (D. Or. 2014) (holding that a claim arising under the Endangered Species Act's citizen suit provision "is evaluated with any admissible evidence and is not limited

---

[5] The Endangered Species Act does not have its own standard of review, and thus most courts have turned to the APA to provide that standard. *See, e.g., Kraayenbrink*, 632 F.3d at 481 (noting that "[i]rrespective of whether an ESA claim is brought under the APA or the citizen-suit provision, the APA's 'arbitrary and capricious' standard applies."); *WildEarth Guardians v. Jeffries*, 370 F. Supp. 3d 1208, 1227 (D. Or. 2019) ("While the APA's standard of review applies to ESA citizen suits, the APA does not limit the scope of review.").

PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REVIEW AND                    Page 9 of 17
FOR LEAVE TO TAKE DISCOVERY

to an administrative record.").[6] Although the above-cited cases were all Endangered Species Act citizen suits, there is no reason why the same conclusion should not be reached for Clean Water Act citizen suits as well.

By deceptively slipping its post-hoc TMDL Synopsis document into its so-called "administrative record" for Claim One, EPA effectively concedes NWEA's point that the Court's review of the constructive submission claim is not limited to any particular record that may have existed at the outset of this litigation. That document was not prepared until May of 2022—nine months *after* the complaint was filed in this case, and only *after* the Court denied EPA's motion to dismiss. It obviously was not "before the agency at the time the agency made its decision" (or lack of a decision) at issue in this case, *see Nat'l Wildlife Fed'n v. U.S. Army Corps of Engineers*, 384 F.3d 1163, 1170 (9th Cir. 2004), and thus is not properly a part of the "administrative record" to begin with.

The TMDL Synopsis document is strikingly similar to the "TMDL Program Review" document considered by the Ninth Circuit it its first constructive submission case, *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002).[7] Although the plaintiff in that case had sought to exclude the document on the grounds that it was nothing but a "'post-hoc staff

---

[6] One district court within the Ninth Circuit seems to have failed to grasp the distinction between the standard and the scope of review in citizen suits under the Clean Water Act or the Endangered Species Act, and declined to follow the Ninth Circuit clear pronouncements in *Kraayenbrink* and *Washington Toxics* by limiting review to the administrative record in citizen suits such as this. *See, e.g.*, *Sierra Club v. McLerran*, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012) (Clean Water Act); *Seattle Audubon Soc'y v. Norton*, No. C05-1835L, 2006 WL 1518895, at *2 (W.D. Wash. May 25, 2006) (Endangered Species Act claim). Those decisions are outliers, however, and need not be followed by this Court.

[7] The TMDL "Program Review" document received by the court in *San Francisco Baykeeper* was prepared in May of 2000, several months after the complaint was filed in that case. *See San Francisco Baykeeper v. Browner*, 147 F. Supp. 2d 991, 997 (N.D. Cal. 2001); *id.*, N.D. Cal. No. 00-cv-00132, Dkt. #1 (complaint filed Jan. 12, 2000).

PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REVIEW AND          Page 10 of 17
FOR LEAVE TO TAKE DISCOVERY

memorandum' that attempts to 'inflate the scope of the State's past and ongoing TMDL efforts in order to beef up EPA's arguments in this action,'" *id*., the Ninth Circuit upheld the district court's decision to admit and consider the document, explaining that

> when a court considers a claim that an agency has *failed* to act in violation of a legal obligation, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record. . . The reason for this rule is that when a court is asked to review agency inaction before the agency has made a final decision, there is often no official statement of the agency's justification for its actions or inactions. As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions.

*Id.* (internal quotations and citations omitted).[8]

Here, EPA attempts to pad the purported "administrative record" of its non-decisions by creating a new, self-serving document from whole cloth, and the only way that document can be considered by the Court is by first concluding that review of Claim One is not limited to the administrative record, as held by the Ninth Circuit in *Dombeck* and *San Francisco Baykeeper*. What is good for the goose is good for the gander, and the Court should similarly hold that NWEA may go beyond the administrative record for Claims One and Three.

**B. NWEA's "unreasonable delay" claim under section 706(1) of the APA (Claim Four) is also not confined to the administrative record.**

The Ninth Circuit has long recognized the important distinction between "arbitrary and capricious" claims under APA section 706(2)(A)—which challenge a discrete, final agency action that has already occurred—and "unreasonable delay" claims under APA section 706(1),

---

[8] Much like this case, *San Francisco Baykeeper* involved both Clean Water Act and APA claims, but the Ninth Circuit's discussion of the lack of a "final agency action to demarcate the limits of the record" was in the context of the Clean Water Act constructive submission citizen-suit claim specifically—and in fact the Ninth Circuit had already affirmed the district court's dismissal of the APA claim. 297 F.3d at 886. Nonetheless, the court's reasoning applies equally to unreasonable delay claims arising under the APA, which also involves review of agency *inaction*.

which are "brought to compel an agency to act in the first instance." *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). The former are properly limited to the administrative record compiled by the agency in the course of making its decision that is under review, *see Camp v. Pitts*, 411 U.S. 138, 142–43 (1973), subject to any needed "supplementation" of the record as circumstances may warrant. *See Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (identifying several "limited exceptions" to the APA's record rule which "operate to identify and plug holes in the administrative record.")

Unreasonable delay claims, however, are not confined "to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record." *Dombeck*, 222 F.3d at 560. *See also San Francisco Baykeeper*, 297 F.3d at 886 ("As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions"). "Said another way, if an agency fails to act, there is no 'administrative record' for a federal court to review." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (citing *Telecomms. Research & Action Ctr. v. F.C.C.,* 750 F.2d 70, 79 (D.C. Cir. 1984)).

Moreover, plaintiffs need not resort to any of the Ninth Circuit's recognized exceptions to the record rule in such "failure to act" cases under section 706(1) of the APA. As one district court has explained, requiring plaintiffs to invoke such an exception as the only basis for going beyond the "record"

> would render superfluous the Ninth Circuit's repeated statements that the record is not closed in such cases. The Ninth Circuit's treatment of record supplementation in failure-to-act cases strongly suggests that failure to act cases are themselves an independent exception to the record review rule.

*Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, 2011 WL 905656, at *2 (D. Ariz. Mar. 15, 2011) (citing *Independence Mining Co. v. Babbitt,* 105 F.3d 502, 505 (9th Cir.1997))

(internal citations and quotations omitted). *See also Stop B2H Coalition v. Bureau of Land Mgmt.*, 552 F. Supp. 3d 1101, 1119 (D. Or. 2021) (considering an expert declaration and a number of documentary exhibits filed by plaintiff in an APA "failure to act" case "based on [the] exception to extra-record review" as set forth by the Ninth Circuit in *Dombeck*).

Consistent with these precedents, the Court should clarify that NWEA is not limited to EPA's "administrative record" in advancing its APA section 706(1) claim (Claim Four).

## II.    Reasonable Discovery of both EPA and DEQ is Necessary to Develop the Factual Record for the Court's Review of NWEA's Constructive Submission Claim (Claim One) and to Probe the Bases for EPA's Defenses as Outlined in the Agency's TMDL Synopsis Document.

In addition to clarification regarding the scope of review of Claims One, Three, and Four as discussed above, NWEA seeks the Court's leave to take discovery of both EPA and DEQ to develop the factual basis for the constructive submission Clean Water Act claim (Claim One), thereby rebalancing the one-sided record that now exists and enabling the Court to provide effective judicial review.

Although discovery of agency defendants in either Clean Water Act cases or APA cases may be unusual, it is not unheard of. In *Oregon Natural Desert Association v. Kimbell*, for example, the court allowed the plaintiff to introduce extra-record evidence, "including expert reports and evidence obtained through discovery," in support of its Endangered Species Act citizen-suit claims against several federal agencies. 593 F. Supp. 2d 1217, 1219 (D. Or. 2009). And in *Wild Fish Conservancy v. National Park Service*, the court denied the agency defendant's motion for a protective order, explaining that "a completely developed record is the best solution, at trial and on appeal, for the just, speedy, and inexpensive determination of Plaintiffs' claims." 2012 WL 5384896, at *1 (W.D. Wash. Nov. 1, 2012).

The need for discovery in such failure-to-act claims, regardless of whether the Clean Water Act or the APA provides the cause of action, is apparent—quite simply, agencies are not in the practice of preparing "administrative records" for actions they do not actually take. As another district court explained,

> where, as here, there is a claim that "agency action [has been] unreasonably delayed," 5 U.S.C. § 706(1), there may well be reason for discovery, since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply a course of conduct, after-the-event justifications for which may need to be explored by plaintiffs.

*Milanes v. Chertoff*, 2008 WL 2073420, at *1 (S.D.N.Y. May 13, 2008).

Here, the "record" presently available to NWEA and the Court is entirely one-sided; it includes only documents that were hand-picked by EPA and DEQ, while NWEA's suggestions were ignored. For Claim One there was no agency decision to guide in the preparation of the purported record, leading EPA to make up its own compilation process intended to suit its own litigation needs. As such, it must necessarily "be viewed as a fictional account of" Oregon's TMDL program. *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993).

If permitted by the Court, NWEA contemplates the following types of discovery—all of which will be reasonable in scope and consistent with the limitations imposed upon all civil litigants by Federal Rule of Civil Procedure 26(b). First, NWEA contemplates a set of requests for production of documents under Rule 34, directed to both EPA and DEQ, consistent with the eleven topics previously provided to those agencies. *See* Saul Decl. Ex. 2.[9] This will allow NWEA to equalize the one-sided record, enabling effective judicial review.

---

[9] NWEA will likely revise and refine that list prior to sending its Rule 34 requests for production, given that EPA has since voluntarily produced some documents.

Second, NWEA intends to take discovery related to EPA's May 2022 TMDL Synopsis document, which appears to be an outline of the agency's defense to Claim One in this case. Although EPA likely thinks of that TMDL Synopsis as an ordinary agency record, it post-dates the initiation of and was clearly prompted by this litigation (*see* Saul Decl. Ex. 3), and its contents are more akin to declaration testimony by its individual authors (EPA employees Claire Schary and Jill Fullagar) combined with an expert report pursuant to Rule 26(a)(2). That document opens the door to discovery by making numerous conclusory assertions about Oregon's TMDL program that are not supported by document citations, not explained in sufficient detail in the document itself, are not obviously within the personal knowledge of the document's authors, are plainly hearsay that would be otherwise inadmissible under Federal Rule of Evidence 802, and in many cases consist of expert opinion testimony about the various deficiencies of the Oregon TMDL program.[10] The document's self-serving, one-sided, "after-the-

---

[10] *See, e.g.*, TMDL Synopsis at EPA_0000006 (vaguely referencing some "staffing and technical capacity issues" and other undisclosed "factors" that "contributed to the delays" inherent in DEQ's water quality assessment program); EPA_0000010 (opining that "[t]he process of developing a TMDL, or especially a TMDL project, can be complex and time-consuming" without explaining why); EPA_0000011 (hearsay testimony describing how DEQ develops a "TMDL project" which "generally takes a period of years"); EPA_0000012 (opining that "ODEQ's TMDL program has been affected, both in staff availability and funding, by frequent litigation challenging its work, in both federal and state courts."); EPA_0000013–14 (cynically opining that NWEA's prior TMDL lawsuits—all of which were successful and resulted in court orders compelling further action of EPA and/or DEQ consistent with the Clean Water Act—are the main cause of the current TMDL delays, as opposed to DEQ and EPA's inability to effectively implement Oregon's TMDL program with the substantial resources it has or to secure any additional funding and staffing needed to comply with the law); EPA_0000023–25 (providing a laundry list of "factors that have emerged as barriers to more rapid completion of the TMDL project schedule in Oregon" that go beyond the "[l]ack of data, insufficient resources, and procedural or administrative hurdles" described elsewhere in the document); EPA_0000028 (stating—incorrectly, and without documentary support—that Oregon "has made significant improvements to its 303(d) assessment program and is increasing its completion rate of TMDL projects" more recently).

PLAINTIFF'S MOTION TO CLARIFY SCOPE OF REVIEW AND                    Page 15 of 17
FOR LEAVE TO TAKE DISCOVERY

event justifications" for EPA's failure to act on DEQ's constructively submitted TMDLs is precisely why discovery is needed in this case. *Chertoff*, 2008 WL 2073420, at *1.

Finally, NWEA may need to take one or more depositions of relevant agency staff at both EPA and DEQ regarding implementation and oversight of Oregon's TMDL program. Potential deponents include the two authors of EPA's TMDL Synopsis document; DEQ Water Program Manager Jennifer Wigal, whose prior testimony is cited as a source of information in that TMDL Synopsis document (*see id*. at EPA_0000023–24, fn. 43 & 44) and who likely has relevant knowledge and information regarding the State's TMDL program; and potentially other agency staff.

Only through such reasonable and carefully tailored discovery may NWEA obtain the evidence needed to prepare and present its arguments on Claim One in a way that might meet the elements of the constructive submission doctrine as defined by the Ninth Circuit in *Columbia Riverkeeper* and *San Francisco Baykeeper*. Given that EPA has unilaterally shaped the existing "record" to suit its own litigation goals—including by writing a post-hoc TMDL Synopsis document in response to NWEA's complaint that is replete with unsupported conclusory statements, hearsay, and opinion testimony—discovery is warranted in this case.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant NWEA's motion to clarify the scope of review of Claims One, Three, and Four in this case, and should issue an order permitting NWEA to take discovery of both EPA and DEQ so that NWEA may obtain evidence relevant to whether there has been a constructive submission of TMDLs in this case.

Respectfully submitted this 15th day of July, 2022.

s/ James N. Saul
James N. Saul
Earthrise Law Center at
Lewis & Clark Law School
10101 S. Terwilliger Blvd.
Portland, OR 97219-7799

*Attorney for plaintiff Northwest
Environmental Advocates*